[No. D011151. Fourth Dist., Div. One. June 25, 1990.]

INDUSTRIAL INDEMNITY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
GARY KAKU, Real Party in Interest.

COUNSEL

Meserve, Mumper & Hughes, Dennett F. Kouri, Daniel S. Gruber and Timothy A. Gravitt for Petitioner.

No appearance for Respondent.

Virginia R. Gilson, Wittman & Fedynyshyn, Michael P. Fedynyshyn and Stephen C. Hinze for Real Party in Interest.

OPINION

**WORK, J.**—Insurer Industrial Indemnity (Industrial) seeks extraordinary relief after the court denied its motion for summary judgment in this action brought by insured Gary Kaku (Kaku). Relying on *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134 [85 Cal.Rptr. 693], the court ruled Industrial must show substantial prejudice from Kaku's late notice of a claim made against him. We distinguish this case from the circumstances

reviewed in *Northwestern Title Security Co.* v. *Flack, supra,* and grant the petition because under the unambiguous terms of the policy, coverage existed for claims made after Kaku permitted the policy to lapse only if reported to the insurer within one year after lapse.

## FACTUAL[1] AND PROCEDURAL BACKGROUND

Kaku, a life insurance salesman, purchased a claims-made professional errors and omissions policy from Industrial Indemnity which he permitted to lapse on March 4, 1987. The policy provided for a one-year extended period after lapse within which the company would cover claims made against Kaku during the extension and reported by him within that period. On November 9, 1987, although Kaku was named as a defendant in an action entitled McNamara v. Henry, he did not notify his insurer of this claim. This case was dismissed without prejudice on December 30. When in June 1988, Kaku was renamed as a defendant by McNamara, he tendered his claim for defense and indemnification to Industrial on June 20. Industrial rejected it as untimely. Kaku sued.[2]

Industrial moved for summary judgment claiming it had no duty to defend or indemnify because Kaku failed to comply with the notice requirements of the policy. Specifically, Industrial argued Kaku was required to notify it of the McNamara claim before the "extended reporting period" expired, as a condition precedent to coverage. The court denied the motion, finding late notice was governed by the notice-prejudice rule announced in *Northwestern Title Security Co.* v. *Flack, supra,* 6 Cal.App.3d 134.

## DISCUSSION

In *Northwestern Title Security Co.* v. *Flack, supra,* 6 Cal.App.3d 124, the court enunciated the general rule that an insurer may not rely on a breach of the cooperation or notice clause to deny coverage in either "occurrence-type" or "claims-type" policies unless it establishes substantial prejudice from the delay. (*Id.* at pp. 141-143.) The insurer in *Northwestern Title Security Co.* v. *Flack* claimed the insured's 13-month delay in reporting a claim was prejudicial as a matter of law. In finding the insurer failed to show prejudice, the court did not detail the terms of the policy, or discuss whether the policy remained in effect. Because the issue of lapse was never raised in *Northwestern Title Security Co.* v. *Flack,* we can only assume the policy remained viable.

---

[1] The parties stipulated to the facts at the time of summary judgment; however, they did not address whether the claim arose from incidents during the insuring term.

[2] The complaint is for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing and negligent infliction of emotional distress.

Industrial argues the notice-prejudice rule does not apply here because Clause VI of Kaku's policy contractually expressly terminates coverage one year after nonrenewal or lapse.

Clause VI of the policy provides: "Extended Discovery Period:

"A. In the event of cancellation or non-renewal of this policy by the NAMED INSURED or the Company, the NAMED INSURED shall be entitled to a free one year extended reporting period covering claims made against the NAMED INSURED and reported to the Company during the extended reporting period for acts, errors or omissions occurring prior to the end of the POLICY PERIOD and otherwise covered by this policy. If the NAMED INSURED is issued the same or similar policy with this Company or another Company, then this free extended reporting period shall not apply.

"B. In the event of cancellation or nonrenewal by either the NAMED INSURED or the Company, the NAMED INSURED shall have the right upon payment of an additional premium within thirty (30) days of the termination, to have issued an endorsement providing a five (5) year extended discovery period covering claims first made during the extended discovery period arising out of acts, errors, omissions or personal injuries which took place prior to the ended of this POLICY PERIOD, and which are otherwise covered by this POLICY. The premium shall be equal to 150% of the NAMED INSURED's last annual premium."

■ "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." (Civ. Code § 1639; *Hillman* v. *Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 866 [257 Cal.Rptr. 535].) "The language of the contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code § 1638). Where the insurer excludes coverage by language which is conspicuous, plain and clear, the insured has no rights under the contract. (*California Ins. Guarantee Assn.* v. *Wood* (1990) 217 Cal.App.3d 944, 948 [266 Cal.Rptr. 250].) Whether a contract is ambiguous is a question of law, subject to independent review. (*Colonial Ins. Co.* v. *Montoya* (1986) 184 Cal.App.3d 74, 82 [228 Cal.Rptr. 833].)

■ We distinguish *Northwestern Title Security Co.* v. *Flack, supra,* 6 Cal.App.3d 134, from the situation here because this contract unambiguously provides Kaku's ability to report claims made after the policy lapsed would terminate at the end of the extended discovery period. The extension clause gave Kaku one year to report claims made after the policy term, a benefit for which Industrial received a specific "end date" of coverage in exchange.

It is undisputed Kaku had three months to report the McNamara claim before expiration of the extended reporting period. Apparently he elected to attempt to resolve the matter favorably without bringing it to the attention of his insurer to avoid an adverse impact on future insurability. His gamble failed and he ultimately reported the claim a full three months after expiration of the extended discovery period. This is not a situation of an eleventh-hour claim, where the reporting period is extended to allow the insured a reasonable period to report. Kaku knew the plain terms of the policy required him to report any claim by March 5, 1988.

We decline to rewrite the clear terms of the contract. When parties have openly and fairly entered into an unambiguous contract courts will not write a new contract for them. (*Green* v. *Vargas* (1935) 7 Cal.App.2d 127, 129 [45 P.2d 347].)

## DISPOSITION

Let a peremptory writ issue directing the superior court to vacate its order denying summary judgment and to make a new and different order granting summary judgment.

Wiener, Acting P. J., and Nares, J., concurred.